### KNIGHT v. FIRST NAT. BANK OF STATESBORO, GA.

(Circuit Court of Appeals, Sixth Circuit. June 28, 1922.)

No. 3626.

1. **Contracts ⬤⇒28(3)—Contract of bank to loan money to packing company not shown.**

In suit on notes, where defendant counterclaimed for damages on ground that plaintiff bank breached its contract to advance money to corporation to be organized by defendant to take over the plant of a packing company, which was largely indebted to the bank, in reliance on which contract defendant executed the notes as accommodation maker and indorser for the new corporation, evidence *held* not to show there was such contract.

2. **Contracts ⬤⇒194—Under contract to loan money to new corporation "taking over" corporation indebted to lender, physical possession of property not "taking over."**

Under contract between bank and promoter that the bank would advance money to corporation to be organized by the promoter to take over the plant of a packing company largely indebted to the bank, the mere taking possession of the plant under a contract of purchase, and making repairs, without paying any of the purchase price, was not a "taking over" of the plant.

In Error to the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Action by the First National Bank of Statesboro, Ga., against Charles H. Knight. Judgment for plaintiff, and defendant brings error. Affirmed.

Graddy Cary and Burnett, Batson & Cary, all of Louisville, Ky., for plaintiff in error.

Wm. Marshall Bullitt and Bruce, Bullitt & Gordon, all of Louisville, Ky., for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DONAHUE, Circuit Judge. The First National Bank of Statesboro, Ga., brought an action in the District Court to recover from Charles H. Knight on two promissory notes, each calling for $6,666.66, with interest at 8 per cent. per annum and costs of protest. The defendant for counterclaim averred that the First National Bank of Statesboro, Ga., through its president, Brooks Simmons, entered into a contract with Knight to the ultimate effect that, if Knight would organize the Southern States Packing Company to take over the plant of the Bulloch Packing Company, which company was largely indebted to the plaintiff bank, and to Simmons, its president, who was also a part owner thereof, and which should agree to take over and purchase said packing plant, the bank would loan to the packing company $100,000 for operating capital when the packing plant was placed in condition to be operated; that, relying upon said promise and agreement, the defendant executed the notes sued upon as accommodation maker and indorser for the corporation organized by him to take over this plant, for the purpose of providing funds to put said plant in repair, and that the proceeds of said notes, with the knowledge of the plaintiff bank, were used for that purpose; that the defendant fully performed his contract, but that the plaintiff bank, after the plant had been taken over and put in condition to be operated, failed and refused to loan the Southern States Packing Company $100,000 for operating capital, or any other sum or amount whatever, to the damage of the defendant in the sum of $50,000, for which he prayed judgment, less a credit thereon of the amount due upon the notes sued upon, with interest. To this counterclaim the plaintiff filed an answer, denying all the material allegations contained therein. At the close of all the evidence the trial court directed a verdict for the plaintiff for the full amount of the two notes, with interest at 6 per cent per annum.

On the trial of this case the plaintiff in error testified that he had "two verbal contracts with the First National Bank of Statesboro, Ga. —one in June, and one in September—and a written contract with the bank through their letter of June 18th." The notes sued upon were renewals of notes for like amounts dated August 13, 1920, and therefore the plaintiff in error could not have been induced to execute these original notes in August by a contract made in the following September. However that may be, the plaintiff in error testified upon cross-examination as follows:

"Q. After the letter of June 18, 1920, did you ever have any other writing or any other verbal agreement with the First National Bank? A. Only in the way of a verbal agreement, which was really nothing but repeating the same agreement in my visit of September, 1920, to Statesboro. Nothing new was agreed on.

"Q. So that everything that the First National Bank agreed to do with you was expressed in the letter they wrote you on June 18 in response to your letter of June 15? A. With the exception they wrote to me about stock subscriptions.

"Q. But so far as lending money it is all in that letter of June 18? A. Yes, sir."

He further testified that when he was in Statesboro, in April of 1920, investigating this plant, he explained to Mr. Simmons that it would

take a lot of money to get the plant in proper condition and to run it, and then said to him:

"'If I should organize a company to take this over, would you put up the money to operate?' and he said, 'Absolutely; you need not worry about that.' He further stated that, if his bank could not furnish all of it, he would go to the bank's connections at Charleston, Atlanta, and Savannah and get the money."

This is all of the April conversation detailed by the plaintiff in error in reference to the bank loaning money for operating capital to the Southern States Packing Company. Even if Simmons' statement had been sufficiently definite as to the amount to be loaned and the security that would be accepted for such loan, Knight did not, in this conversation, agree or obligate himself to organize a company to take over this plant and put it in repair. On the contrary, he merely inquired as to the possibility of securing loans from Simmons if he (Knight) would organize such a company. This fully appears by his letter of the 15th of April, directed to Simmons, in which he said:

"Want to assure you that I deeply appreciate your showing me over the county, and, while I have not come to any definite conclusion in regard to the proposition, hope to do so in a short time."

The next communication from Knight to Simmons was his letter of June 15th, the important parts of which read as follows:

"You will recall having met me in Statesboro several weeks ago, when there for the purpose of inspecting the plant of the Bulloch Packing Company in company with Messrs. F. B. Williamson and R. M. Williams. * * * We have agreed to associate ourselves with these gentlemen and take over and operate the plant in connection with several others; a new and much larger corporation being necessary and of which I will be the president. The present sale contract secured by Mr. Williams seems satisfactory in every way. * * * The plant as it stands now is deficient in many vital respects, and, in order to make satisfactory returns, will have to be enlarged and expanded in many ways, particularly in additional cold storage, freezer, and ice-making capacity. This must be immediate and will require a considerable cash outlay. As you doubtless know, a very large sum of money is required to operate a packing house, but the turnover is fast, and packing paper is considered strictly gilt edge. We are large borrowers in our business, and what we desire to know is the attitude your local bankers will take in respect to loans for operating purposes. * * * I am directing this letter to you, with the request that you kindly take the matter up. with the presidents of both the Bank of Statesboro and the Sea Island Bank, and write me promptly what we can expect from them in the line of credit, only for operation. You are no doubt familiar with our rating, and Dun or Bradstreet will show both the Louisville Provision Company, Henry Knight & Son, Louisville Rendering Company, and the Standard By-Products Company, which are under our control and management."

This letter did not refer to the alleged prior agreement or contract between Knight and the bank, but, on the contrary, requested that Simmons would inform him as to the attitude of the local banks in reference to loaning money for operating capital. It was not an acceptance nor did it purport to be an acceptance, of any proposition made by Simmons in April, and, even if it did so purport, the situation had entirely changed. Before the receipt of this letter, the owners of this plant had entered into a written contract with Mr. Williams, by the terms of which Williams had agreed to organize a company to take over this

plant and to pay for it $85,000 in money on or before July 10, 1920, and $75,000 par value of the new company's 8 per cent. cumulative preferred stock. It appears from the testimony of Mr. Williams, offered on behalf of the plaintiff in error, that he and Mr. Williamson had for some time prior thereto been trying to buy this packing plant, and that on June 1, 1920, he made a contract with the owners of the property to buy the same, and it further appears from Knight's letter that it was after this contract was made, and the contract seemed satisfactory to him, that he became associated with these gentlemen in this enterprise. That being true, the purpose of the First National Bank of Statesboro, Ga., and its president, Mr. Simmons, in making the inducements and representations to Knight, as averred in his counterclaim, had been fully accomplished before Knight became associated with Williams and Williamson in this enterprise.

In reply to Knight's letter of June 15th, Simmons on June 18th wrote a letter, which in part reads as follows:

"My impression is that the three banks could advance as much as $100,000 or perhaps $150,000, and we shall hope to be able to give you assistance in securing some from our connections in Savannah and Atlanta, and I feel sure Messrs. Groover and Donaldson will do likewise, should it be necessary."

Mr. Knight not only admits that he received this letter, but it was offered by him in evidence, and, in connection therewith, he testified that its terms were substantially the same as the terms of the oral contract that he claimed was made in April of that year. In his letter of June 15th Knight stated:

"We have agreed to associate ourselves with these gentlemen and take over and operate the plant. * * * We are large borrowers in our business. * * * You are no doubt familiar with our rating, and Dun or Bradstreet will show both the Louisville Provision Company, Henry Knight & Son, Louisville Rendering Company, and the Standard By-Products Company, which are under our control and management."

This statement referring Simmons to Dun or Bradstreet as to the rating of these other companies, considered in connection with the further statements: "We have agreed to associate ourselves with these gentlemen" (referring to Williams and Williamson), and "we are large borrowers in our business," "you are no doubt familiar with our rating" is not possible of any construction other than that the credit of these companies would be pledged for the security of any loans to the new company. In any event, if that was not the meaning and intent of these statements, yet if Simmons and the other local bankers so interpreted them, the mistake was not occasioned by their fault, but rather by the fault of the writer. Later Knight again wrote Simmons, suggesting that local people interested in the Bulloch plant ought to subscribe for some of the capital stock in the new company. This met with ready response, and $15,500 was subscribed upon condition that Knight and his associates would carry out and perform the contract with Williams, dated June 1, 1920, by the payment of $85,000 in cash on or before July 10, 1920.

If there were any possibility of construing the statement made by Simmons in his letter of June 18th as to his impression respecting the

amount the local banks would loan, and his hope to be able, if necessary, to secure other loans from other banks, into an absolute contract on the part of the First National Bank of Statesboro to loan the new company $100,000 for operating capital upon its own credit, nevertheless the new company, the Southern States Packing Company wholly failed to take over and pay any part of the $85,000 purchase price on July 10, 1920, as required by the contract, or at any other time. Upon this proposition there is no conflict in the evidence. On the 19th day of August, 1920, a new contract was entered into by the owners of the plant directly with the Southern States Packing Company, extending the time for this cash payment, and providing for payment of the same by installments in September and November of that year and January and March of the next year. At the time demand was made upon Simmons in Louisville, as stated by Knight, to loan this new company $100,000 on its own credit for operating capital, no part of this purchase price had been paid, and it then was in default for payments over due in the sum of $36,416.66.

On November 22, 1920, and after the refusal by Simmons to loan this money, Knight with full knowledge of all the facts now relied upon, wrote Simmons enclosing a check for the interest on one of the notes here sued upon, due November 25th, and inclosing a renewal note. On November 29, 1920, the First National Bank of Statesboro, Ga., wired Knight as follows:

"Letter received, your position ridiculous. Carry out your agreement and practically sure you can get all ever promised. Note protested. Unless satisfactory security offered for both notes will give our attorney to-morrow. Please answer."

[1, 2] It is clear from a consideration of this entire record that the plaintiff in error offered no substantial evidence to sustain the material averment of his counterclaim. On the contrary, his testimony as to his conversation with Simmons in April and September, and the letter of Simmons to him, dated June 18th, conclusively show that the plaintiff bank did not enter into any contract to loan the Southern States Packing Company $100,000, or any other sum or amount whatever. It also further appears, from the uncontradicted evidence offered by the plaintiff in error, that even if the proof offered in his behalf, including testimony of witnesses other than plaintiff in error, tended to sustain the contract pleaded in his counterclaim, he wholly failed to perform the conditions precedent on his part to be performed. The taking possession of this plant under a contract of purchase and making repairs thereon, without paying any part of the purchase price whatever, was not "a taking over" within the terms of the claimed contract. On the contrary, the failure to pay the purchase price was a failure of consideration, and that appearing by the uncontradicted evidence offered by the plaintiff in error would require the trial court to direct verdict.

The trial court based its order directing a verdict upon three grounds, one of which was that there never was any contract with the defendant respecting these notes except his promise to pay each of them. Giving full force and effect to all the evidence offered on behalf of plaintiff in error, the trial court could reach no other conclusion. It is therefore

unnecessary to the determination of this case to consider the other questions presented by this record.

For the reasons above stated, the judgment of the District Court is affirmed.